IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VOLKSWAGEN GROUP OF AMERICA, INC., <br><br> *Plaintiff*, <br><br> -against- <br><br> THOMAS JOSEPH KOVARCIK SMITH, <br><br> *Defendant*. | Case No. _____ <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Volkswagen Group of America, Inc. ("VWGoA") alleges as follows against Defendant Thomas Joseph Kovarcik Smith ("Smith"):

**Nature of the Action**

1. This action seeks injunctive relief, equitable relief, and damages for Smith's legal malpractice, breach of contract, and breach of his fiduciary duties to VWGoA resulting from Smith's improper withholding of $1,004,685.92 of VWGoA's funds. These funds are indisputably owed to VWGoA under Smith's engagement agreement with VWGoA (the "Agreement"), but Smith withheld them to pressure VWGoA to pay him more than provided under the Agreement and New York law.

2. In 1997, VWGoA agreed to engage Smith to pursue refunds or reductions of duties paid to U.S. Customs and Border Protection ("Customs") for merchandise imported by VWGoA. VWGoA and Smith entered into the Agreement, which entitled Smith to 33.33% of "any refunds or reductions of duty arising from" the merchandise at issue. In all, Smith filed duty protest claims covering approximately 6,500 entries and secured refunds of duties for VWGoA totaling $21,933,024.39, from which he was paid more than $7 million in fees.

- 2 -

3. In March 2015, VWGoA decided to cease this adversarial approach with Customs, and directed Smith to stop filing new duty protest claims, but permitted Smith to finalize all duty protest claims that had already been filed. Smith did so without objection (although he repeatedly encouraged VWGoA to file additional claims, which it declined to do). Smith never claimed that VWGoA's direction violated the Agreement, or that he was nevertheless entitled to fees based on his speculation about recovery under potential duty protest claims that could have been, but were not, filed.

4. But in January 2019—nearly four years later and for the first time—Smith claimed exactly that. According to Smith, VWGoA's decision, as the client, to stop filing protests somehow "contraven[ed]" the Agreement, and entitled him to $2,066,067 in "lost fees" for duty protest claims he does not dispute he did not file. In Smith's view, he supposedly secured (without any written agreement) a .75% "reduction in duty" for all possible duty protest claims ever, and this granted him a right in perpetuity to file duty protest claims on VWGoA's behalf. Smith then improperly withheld more than $1 million of the monies owed to VWGoA, claiming that he was entitled to keep those funds as compensation for his lost fees.

5. At first, Smith "recommend[ed]" a compromise—let him keep the more than $1 million of VWGoA's funds held in escrow and call it even. When VWGoA rebuffed his thinly-veiled shakedown, Smith not only refused to return VWGoA's funds in direct violation of the Agreement, but sought payment of the full $2,066,067 in "damages/fees" for duty protest claims he did not file and for which VWGoA received no recovery.

6. This action seeks injunctive relief to prevent Smith from converting VWGoA's funds held in escrow, damages for Smith's breach of contract, breach of his fiduciary duties to

VWGoA, and legal malpractice, and equitable relief declaring that Smith is not owed any further fees under the Agreement.

## The Parties

7.VWGoA is incorporated under the laws of New Jersey and is headquartered in Herndon, Virginia.  VWGoA is a wholly-owned subsidiary of Volkswagen Aktiengesellschaft, the largest carmaker in Europe.

8.Upon information and belief, Smith is a resident of New York and a licensed New York attorney.  Upon information and belief, his law office is located at 590 Madison Avenue, 21st Floor, New York, New York 10022.  According to his website, www.thomasjksmith.com, Smith "prefer[s] to work on a contingent fee basis" in "customs duty refund matters," and "*there is no fee unless and until we **recover** duty refunds for you*."  (Single emphasis in original; double emphasis added.)

## Jurisdiction and Venue

9.The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because VWGoA and Smith are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.The Court has personal jurisdiction over Smith.  Upon information and belief, Smith is a resident of New York and operates his law office in Manhattan.  Moreover, the Agreement was negotiated, drafted, and signed by Smith in New York, and, upon information and belief, the escrow account in which VWGoA's funds are held is located in New York.

11.Venue is proper in this Court pursuant to 18 U.S.C. § 1391.

**The Fee Agreement**

12.     On April 22, 1997, VWGoA and Smith executed the one-page fee Agreement drafted by Smith.  *See* Ex. 1.[1]  Smith agreed to a "contingent fee equal to 33.33% of any refunds or reductions of duty arising from defective merchandise imported by VWGoA."  *Ibid*.  The Agreement neither defines nor differentiates between the terms "refund" or "reduction" of duty, but the import of the language is clear:  Smith is entitled to 33.33% of the actual amount refunded by Customs to VWGoA in response to duty protest claims actually filed, whether styled as a "refund" or a "reduction" of the duties VWGoA previously paid.

13.     The Agreement further provides that "duty refund checks shall be made payable to the importer of record"—*i.e.*, VWGoA—"in care of [Smith's] office," and that Smith "shall deposit the funds in a designated escrow account, and disburse them in accordance with this agreement."  *Ibid*.  Thus, the Agreement requires that after Smith takes his percentage fee from the refunds issued by Customs, he must disburse the remainder of the funds to VWGoA.

**The Duty Refunds and Purported Settlement**

14.     When merchandise is imported and entered into the United States, the importer of record making entry must pay duties to Customs.  Once the entry has been liquidated—which means that Customs has calculated the final amount of duties, fees and taxes owed—the importer may file a formal protest challenging the amount of duties levied.  Two bases for challenging excess duties, fees or taxes paid are that (1) the merchandise was defective—and therefore the entered value was overstated—at the time of importation, and (2) the entered value (*i.e.*, the

---

[1] On December 6, 2007, Volkswagen of America, Inc. changed its name to Volkswagen Group of America, Inc..

"transaction value") should have excluded the value of post-importation warranty (*i.e.*, maintenance or technical assistance) repair costs incurred by the importer.

15.  19 C.F.R. § 174.29 provides that if a "protest is allowed in whole or in part," Customs "shall remit or refund any duties . . . found to have been collected in excess."

16.  Upon information and belief, Smith filed duty protest claims seeking refunds of overpaid duties on covering approximately 6,500 liquidated "entries"—forms submitted in connection with imports that Customs uses to, among other things, appraise the value of the merchandise and to assess duties—made between January 1993 and April 2014.

17.  On January 14, 2015, Smith told VWGoA that officials from the U.S. Department of Justice ("DOJ") and from Customs had approved a duty refund settlement, but that no duty refund amount had been determined.

18.  Eventually, Smith claimed that the DOJ and Customs agreed to pay a .75% refund on VWGoA's filed duty protest claims.

### VWGoA's Decision To Stop Filing Protest Claims

19.  In early 2015, VWGoA decided for a number of reasons to cease this adversarial approach with Customs. In March 2015, VWGoA instructed Smith to stop filing new duty protest claims, effectively terminating his engagement. However, since Smith reported that he had reached a settlement with Customs regarding duty protest claims already filed, VWGoA permitted Smith to finalize the settlement of such duty protest claims.

20.  Smith never objected to VWGoA's instruction. Moreover, although Smith sought to convince VWGoA to file additional protest claims, he never informed VWGoA that if it did not permit him to file new claims, he would nonetheless seek a success fee on those unfiled claims. For example, on September 21, 2015, Smith "renew[ed] [his] recommendation that protest filing

be resumed ASAP," but made no mention of the compensation he apparently intended to seek in any event.

21. Years later, Smith was still trying to change VWGoA's mind. In January 2018, Smith asked for VWGoA's "thoughts on [Smith's] idea for additional refund claims" and sent VWGoA a new draft engagement letter substantially similar to the Agreement. In February 2018, Smith again told VWGoA that "the potential for substantial refunds is great." Although VWGoA reiterated to Smith that it was "not inclined to pursue new claims," Smith asked again multiple times in March, April, May, and June 2018.

22. At no point in any of these communications did Smith assert that VWGoA had breached the Agreement in any way or that he planned to claim damages or fees whether VWGoA filed additional protest claims or not.

### Smith Breaches the Agreement and His Fiduciary Duties to VWGoA

23. On January 24, 2019, Smith sent to VWGoA a summary of the duty refunds recovered. In total, Smith "recovered duty refunds of $21,933,024.39," which applied to VWGoA merchandise imported between "January 1993 and April 2014." From that amount and consistent with the Agreement, Smith has been paid $7,305,761.96 in fees. However, Smith disbursed to VWGoA only $13,622,576.51, leaving $1,004,685.92 of VWGoA's funds in escrow.

24. In the January 24, 2019 summary, Smith asserted for the first time that VWGoA's instruction to Smith to stop filing duty protests was somehow "in contravention of the retainer agreement." According to Smith's math—based entirely on hypothetical duty protests that were never actually filed—"not filing protests since March 16, 2015 resulted in forfeited refunds of $1,600,000," and "contingency fees lost by [Smith's] office thereon of $533,333" per year. Smith calculated that "as a result of non-filing" from March 2015 to the present, "[Smith's] office lost

contingency fees . . . of $2,066,067." Smith's self-serving "recommendation for resolving this issue" was for VWGoA "to stipulate that the $1,004,685.92 remaining in escrow covers" Smith's purported outstanding fees.

25. Smith calculated these so-called "forfeited refunds" using the ".75% refund amount on protests" that Customs had applied to actually-filed protests. The prior duty refund claims on which Customs paid refunds were settled pursuant to separate, claim-specific written agreements.

26. Smith has contended that "Customs had already agreed to pay the protest claims" at .75%, but Smith was unable, and has never been able, to provide VWGoA with any written agreement with Customs to do that.

27. VWGoA objected to Smith's unreasonable and unprofessional suggestion. VWGoA made clear that the "client always has the right to determine which claims it will and will not pursue," and Smith has "no ownership interest in [VWGoA's] claims or entitlement to 'lost fees' for which there [was] not a corresponding recovery." Smith maintained, however, that VWGoA's "direction to cease filing protest claims during [the] engagement—whatever [VWGoA's] internal reason for that direction was—breached the engagement agreement" and "caused [his] firm to lose millions of dollars in fee revenue."

**Smith Refuses To Transfer VWGoA's Funds**

28. On April 11 and 26, 2019, VWGoA sent letters to Smith demanding that he remit to VWGoA the $1,004,685.92 in duty refunds from Customs that he held in escrow. In its April 26 letter, VWGoA put Smith on notice that he was violating New York Rule of Professional Conduct 1.15, which obligated Smith to "promptly pay or deliver" to VWGoA its funds held in escrow, and prohibited Smith from "withhold[ing] the [VWGoA's] share of funds to coerce [it] into accepting [Smith's] claim for fees."

29. Smith does not dispute that the funds currently held in escrow are from duty refunds paid by Customs and that, under the Agreement, those funds belong to VWGoA. Nevertheless, Smith refused to disburse them. In his letters in response, Smith continued to contend that when Customs "accepted [VWGoA's] offer of a .75% refund of duty on protests, a reduction of duty of .75% arose," and that the Agreement "does not require that [VWGoA] take any of the refunds or reductions [in duty] for [his] fees to be earned."

30. In his May 3, 2019 letter, Smith not only refused to return VWGoA's funds in violation of the Agreement, but also demanded payment from VWGoA of the full $2,066,666.67 in so-called lost fees for customs duty protests he never filed or refunds from Customs he never received "within 30 days hereof."

## First Cause of Action

### (Breach of Contract)

31. VWGoA repeats and realleges all the allegations set forth in paragraphs 1 through 30, as if fully set forth herein.

32. The Agreement is an enforceable contract governed by New York law.

33. VWGoA performed all relevant obligations imposed upon it by the Agreement.

34. Smith breached the Agreement when he failed to disburse to VWGoA the funds to which it was entitled, and instead withheld those funds and deposited them into his escrow account.

35. As a direct and proximate result of Smith's breach of the Agreement, VWGoA has been and continues to be harmed and has suffered damages in an amount to be proved at trial in excess of $1,004,685.92.

## Second Cause of Action

## (Breach of Fiduciary Duty)

36. VWGoA repeats and realleges all the allegations set forth in paragraphs 1 through 35, as if fully set forth herein.

37. Smith had an attorney-client relationship with VWGoA.

38. As VWGoA's counsel, Smith owed VWGoA the duties of good faith, loyalty, trust, candor, fair dealing, and reasonable care.

39. Smith breached his fiduciary duties by failing to advise VWGoA that he believed VWGoA to be in breach of the Agreement when VWGoA directed Smith to stop filing duty protest claims. Specifically, Smith never honestly communicated to VWGoA that he intended to charge fees on all possible duty protest claims that VWGoA could have filed. Indeed, Smith never claimed that VWGoA breached the Agreement until after he received the duty refunds paid by Customs, almost four years after VWGoA instructed him to stop filing protest claims.

40. In failing to communicate honestly with VWGoA, Smith subverted the attorney-client relationship in such a manner that VWGoA's interests were subordinated to those of Smith.

41. Smith further breached his fiduciary duties by refusing to remit to VWGoA $1,004,685.92 in client funds to which VWGoA was entitled under the Agreement, and by charging VWGoA $2,066,666.67 in fees for work that he did not do and to which he is not entitled.

42. In refusing to remit to VWGoA its client funds and charging VWGoA fees for work he did not do and to which he is not entitled, Smith subverted the attorney-client relationship in such a manner that VWGoA's interests were subordinated to those of Smith.

43. As a direct and proximate result of Smith's breach of his fiduciary duties, VWGoA has been and continues to be harmed and has suffered damages in an amount to be proved at trial in excess of $1,004,685.92.

### Third Cause of Action

### (Legal Malpractice)

44. VWGoA repeats and realleges all the allegations set forth in paragraphs 1 through 43, as if fully set forth herein.

45. Smith had an attorney-client relationship with VWGoA.

46. As VWGoA's counsel, Smith owed VWGoA a duty to exercise reasonable and professional care in providing legal services to VWGoA.

47. Smith failed to exercise reasonable and professional care in providing legal services to VWGoA. Specifically, Smith (i) never honestly communicated to VWGoA that he intended to charge fees on all possible duty protest claims that VWGoA could have filed; and (ii) willfully withheld funds to which VWGoA is entitled and has willfully sought payment of fees from VWGoA to which he is not entitled.

48. As a direct and proximate result of Smith's legal malpractice, VWGoA has been and continues to be harmed and has suffered damages in an amount to be proved at trial in excess of $1,004,685.92.

### Fourth Cause of Action

### (Declaratory Judgment)

49. VWGoA repeats and realleges all the allegations set forth in paragraphs 1 through 48, as if fully set forth herein.

50. The Agreement is an enforceable contract governed by New York law.

51. Under the Agreement—which was effectively terminated on March 17, 2015, when VWGoA directed Smith to cease filing additional duty protest claims—Smith is entitled only to a percentage of refunds or reductions of duties actually received by VWGoA, and must "disburse" the remaining funds to VWGoA.

52. Smith has sought payment of $2,066,666.67 fees from VWGoA for duty protest claims he did not (and was not authorized to) file and for which Customs issued no refunds of duty. But the Agreement does not entitle Smith to fees in perpetuity for every duty protest claim that could have been filed on VWGoA's behalf.

53. In violation of this ethical duties, Smith has engaged in self-help and withheld $1,004,685.92 in duty refund payments made by Customs to which only VWGoA is entitled.

54. A real and justiciable controversy exists between VWGoA and Smith.

55. Accordingly, this Court should issue a declaration pursuant to CPLR § 3001 that under the Agreement, (i) Smith is not entitled to $2,066,666.67 in fees for duty protest claims he did not file and for which Customs issued no refunds of duty; and (ii) Smith must perform under the Agreement and immediately "disburse" the funds held in escrow to VWGoA, and any other funds received from filed duty protest claims on VWGoA's behalf.

### Fifth Cause of Action

### (Unjust Enrichment)

56. VWGoA repeats and realleges all the allegations set forth in paragraphs 1 through 55, as if fully set forth herein.

57. Smith has been unjustly enriched at VWGoA's expense in the amount of $1,004,685.92, which belongs to VWGoA but Smith currently holds in escrow and refuses to remit to VWGoA.

58. Under principles of equity and good conscience, Smith should not be permitted to keep the $1,004,685.92 held in escrow and to which Smith has no claim.

59. As a direct and proximate result of Smith's unjust enrichment, VWGoA has been and continues to be harmed and has suffered damages in an amount to be proved at trial in excess of $1,004,685.92.

## Demand for Judgment

WHEREFORE, VWGoA demands judgment in its favor and against Smith:

a. imposing preliminary and permanent injunctive relief:

    a. enjoining Smith, and anyone acting in concert with him, from taking possession of the $1,004,685.92 of VWGoA's funds held in escrow; and

    b. requiring Smith, and anyone acting in concert with him, to immediately remit to VWGoA the $1,004,685.92 of VWGoA's funds held in escrow;

b. awarding compensatory, consequential, and punitive damages as VWGoA shall prove at trial;

c. declaring that Smith is not entitled to fees for duty protest claims he did not file and for which Customs issued no refunds of duty, and that Smith must immediately remit the funds held in escrow to VWGoA;

d. awarding VWGoA its attorneys' fees, costs, and disbursements; and

e. awarding VWGoA such other and further relief as the Court may deem just and proper.

\*   \*   \*

- 13 -

Dated:  June 3, 2019                                    Respectfully submitted,

                                                /s/ *Howard J. Kaplan*
Howard J. Kaplan
John P. Collins, Jr.
KAPLAN RICE LLP
142 West 57th Street, Suite 4A
New York, New York  10019
Tel: (212) 235-0300
Fax: (212) 235-0301

*Counsel for Volkswagen Group of America, Inc.*

# EXHIBIT 1

# IRVING A. MANDEL
*Counselor at Law*

237 Park Avenue, 21st Floor
New York, New York 10017

(212) 622-9221
Fax (212) 983-8938

April 22, 1997

John M. Haynes
Volkswagen of America, Inc.
3800 Hamlin RD
Auburn Hills, MI 48326

Re: Defective Merchandise Claims
    Litigation Agreement

*CONFIDENTIAL*

Dear John:

Because the defective merchandise claims for Volkswagen and Audi have reached the stage of litigation that requires us to gather the evidence necessary to prove the claims, I thought it best to confirm and reduce to writing our agreement concerning legal fees.

As previously agreed, our fee will be a contingent fee equal to 33.33% of any refunds or reductions of duty arising from defective merchandise imported by Volkswagen of America and/or Audi.

Pursuant to Customs Regulations § 174.13, duty refund checks shall be made payable to the importer of record, in care of this office. We shall deposit the funds in a designated escrow account, and disburse them in accordance with this agreement, together with a full accounting to the importer.

Please confirm your agreement to the above by signing where indicated below, and returning to me, a copy of this letter.

Very truly yours,

*[signature]*

Thomas J. Kovarcik
Of Counsel

ACCEPTED AND AGREED TO BY:

*[signature]*

VOLKSWAGEN OF AMERICA, INC.

# IRVING A. MANDEL
*Counselor at Law*

237 Park Avenue, 21st Floor
New York, New York   10017

(212) 922-9221
Fax (212) 983-8938

November 9, 1998

John M. Haynes
Volkswagen of America, Inc.
3800 Hamlin RD
Auburn Hills, MI 48326

Re:   Defective Merchandise Litigation

**CONFIDENTIAL**

Dear John:

    I wish to confirm our telephone conversation of this afternoon in which I advised you that Irving and I recommend that my name be added to the the retainer agreement between Volkswagen of America, Inc. and Irving A. Mandel as co-equal counsel. All other terms of the agreement would continue unchanged. This arrangement would allow us greater flexibility in pursuing Volkswagen's interests in the litigation. I will, of course, continue to serve as trial counsel in all cases. Please indicate your agreement to the above by signing and returning a copy of this letter to me.

Very truly yours,

Thomas J. Kovarcik

Accepted and Agreed To:

_____
John M. Haynes

TJK/ns